UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEFFREY YARDLEY, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO. 1:17-CV-1253 |
| Q SERVICES, LLC, | ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Jeffrey Yardley ("Yardley"), by counsel, brings this action against Defendant, Q Services, LLC ("Q Services"), and shows as follows:

## OVERVIEW

1. This lawsuit arises under the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201 *et. seq.,* the Indiana Wage Claims Statute, I.C. § 22-2-9 *et seq.*, Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §2601 *et. seq.*, and I.C. § 22-2-6-4. Specifically, Q Services failed to pay Yardley the minimum wage and overtime premium required by the FLSA. Q Services also failed to pay Yardley all his earned wages as required by the Indiana Wage Claims Statute. Lastly, Q Services interfered with rights afforded to Yardley under the FMLA and Q Services retaliated against Yardley for exercising his right to take protected leave to which he was entitled under the FMLA.

## PARTIES

2. Yardley is an individual who resides in Hamilton County, Indiana. He was employed by Q Services within the meaning of the FLSA during the three-year period

prior to the filing of this Complaint. At all times hereinafter mentioned, Yardley was an individual employee within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

3. Yardley was employed by Q Services from approximately August 2015 to March 8, 2017.

4. Q Services is an Indiana limited liability company that conducts business and maintains offices and warehouses in Hamilton County. Q Services acted, directly or indirectly, in the interest of an employer with respect to Yardley. Q Services is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

5. Yardley was an 'eligible employee' as that term is defined by 29 U.S.C. §2611(2).

6. Q Services is an 'employer' as that term is defined by 29 U.S.C. §2611(4).

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Q Services because Yardley has asserted a claims arising under federal law. This Court has supplemental jurisdiction over Yardley's Indiana state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as all events, transactions, and occurrences pertinent to this lawsuit have occurred within the geographical environs of the Southern District of Indiana and all parties are located herein.

## FLSA COVERAGE

9. At all times hereinafter mentioned, Yardley was engaged in interstate commerce as defined by the FLSA, 29 U.S.C. § 207.

10. At all times hereinafter mentioned, Q Services has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. §203(r).

11. At all times hereinafter mentioned, Q Services has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. §203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

## **FACTUAL ALLEGATIONS**

12. Yardley was hired by Q Services on or about August 2015 and worked as a full-time employee in the position of "inventory control specialist."

13. Yardley worked in excess of 1,250 hours between February 25, 2016 and February 24, 2017.

14. Yardley worked in excess of 1,250 hours between March 9, 2016 and March 8, 2017.

15. Q Services paid Yardley an hourly rate of $14.00 per hour.

16. At all times Yardley capably performed his job duties and met Q Services' expectations of performance. Q Services did not have cause to separate Yardley from his employment.

17. On February 24, 2017 Yardley attended an appointment with an orthopedic surgeon and learned that he required knee surgery that would force him to take leave from Q Services for approximately six (6) weeks.

18. The same day as his appointment, February 24, 2017, Yardley returned to work and informed his supervisor, Bryce Basista, that he was in need of knee surgery that would force him to take leave from Q Services for approximately six (6) weeks.

19. Yardley continued to work for Q Services until March 8, 2017.

20. Less than two weeks after Yardley informed Basista of his intention to take FMLA protected leave and on March 8, 2017, Basista asked Yardley to follow him to the mezzanine area of the warehouse where Basista held up his mobile phone. Basista's phone was on speaker mode and Lisa Grego, a human resources employee, was on the line and informed Yardley that he was being terminated.

21. Yardley was entitled to FMLA leave for his serious health condition that required, at a minimum, one surgery, six weeks recovery time and leave from work, and follow-up visits with his doctor.

22. Q Services interfered with Yardley's FMLA rights by denying Yardley FMLA leave and/or by terminating his employment.

23. Q Services retaliated against Yardley for his stated intention to take the medical leave he was entitled to take under the FMLA.

24. Q Services' unlawful conduct violated rights afforded to Yardley by the FMLA.

25. Yardley has suffered financial harm as a result of Q Services' unlawful conduct.

26. During his employment, Yardley was paid his earned wages on a bi-weekly basis.

27. Yardley regularly worked forty (40) or more hours each workweek he was employed by Q Services and Q Services never indicated to Yardley that this regular work schedule would change prior to the date he was terminated on March 8, 2017.

28. For the last pay-period of Yardley's employment, February 26, 2017 to March 11, 2017, Yardley worked in excess of forty (40) hours in a single workweek.

29. Q Services was aware that Yardley worked in excess of forty (40) hours in a single workweek during the final pay period of his employment.

30. Specifically, Q Services provided Yardley with a pay stub for this period showing Yardley worked a total of 68 hours from February 26, 2017 to March 11, 2017. This paystubs also showed that Yardley had worked a total of 21 overtime hours during this period. Lastly, this paystub showed that Yardley was entitled to be paid out a total of 80 hours in earned vacation pay.

31. Accordingly, Yardley's final paycheck from Q Services should have been paid to Yardley in the gross total sum of $2,520.00 and in the net amount of $1,674.36.

32. On March 24, 2017, Q Services made a direct deposit to Yardley's bank account in the total of $1,674.36.

33. Also on March 24, 2017, Q Services reversed the deposit of $1,674.36 it had previously made to Yardley's bank account.

34. On March 25, 2017, Yardley sent an email to Lisa Grego stating, "Is there an explanation for why I received my last paycheck, and then Q Services took it back?"

35. On March 26, 2017, Lisa Grego responded to Yardley, stating, "Yes; the management team is completing the final audit of your time and records. Your final pay will be adjusted appropriate to the records collected. You will receive more information on this."

36. In response, Yardley sent an email to Grego stating, "The amount was correct. The hours were correct. I now have overdraft fees. This doesn't make any sense." In response, Grego sent another email stating, "You will receive a follow up with more information soon."

37. As of the date of this filing, Q Services has paid Yardley no wages for the final pay period of his employment.

38. As a result of Q Services' failure to pay Yardley any wages for the final pay period of his employment, Q Services has not paid Yardley the minimum wage required under the FLSA.

39. As a result of Q Services' failure to pay Yardley any wages for the final pay period of his employment, Q Services has not paid Yardley the overtime premium required under the FLSA.

40. At the time Q Services terminated his employment, Yardley had earned accrued vacation.

41. As of the date of this filing, Q Services has failed to pay Yardley his earned vacation pay.

42. On April 3, 2017, Yardley filed a wage claim with the Indiana Department of Labor. On April 11, 2017, the Indiana Office of the Attorney General referred

Yardley's wage claim to the undersigned attorney, Robert J. Hunt, for prosecution of this matter.

### COUNT I: FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT

43. Yardley hereby incorporates by reference Paragraphs 1 – 42 of this Complaint.

44. During the relevant time period, Q Services has violated and is violating the provisions of 29 U.S.C. §§ 206 and 207 by failing to comply with the minimum wage and overtime requirements of the FLSA. Q Services has acted willfully in failing to pay Yardley in accordance with the law.

### COUNT II: FAILURE TO PAY WAGES IN ACCORDANCE WITH INDIANA CODE

45. Yardley hereby incorporates by reference Paragraphs 1 – 44 of this Complaint.

46. Q Services violated I.C. § 22-2-9 *et. seq.* by failing to timely pay Yardley his earned wages.

47. Q Services' refusal to timely pay Yardley his earned wages was in bad faith.

### COUNT III: VIOLATION OF THE FMLA

48. Yardley hereby incorporates by reference Paragraph 1 – 47 of this Complaint.

49. Yardley was wrongfully terminated from his employment due to his attempt to exercise his rights to leave under the FMLA. Yardley's attempts to exercise his FMLA leave rights improperly motivated Q Services to terminate Yardley's

employment. Said wrongful termination of Yardley's employment is prohibited by 29 U.S.C. § 2615.

50. By way of this Complaint, Yardley is specifically alleging that Q Services terminated his employment in order to interfere with his right to take FMLA leave.

51. Additionally, by way of this Complaint, Yardley is specifically alleging that Q Services terminated his employment in order to discriminate against and retaliate against him for attempting to take FMLA leave.

52. Q Services unlawfully interfered with, restrained and denied Yardley of his protected rights under the FMLA.

53. Q Services actions were intentional, willful, and/or undertaken in reckless disregard of Yardley's rights as protected by the FMLA.

54. Yardley has suffered, and continues to suffer, damages as a result of Q Services' unlawful actions.

55. As a direct and proximate result of Q Services' unlawful conduct, Yardley has sustained substantial economic losses, including past and future loss of wages, and other economic benefits. By way of this Complaint, for Q Services' violation of the FMLA, Yardley is seeking all available damages, including, but not limited to, liquidated damages, back pay and benefits, reinstatement, front pay and benefits, all his attorney's fees, costs, and expenses, and any other damages necessary to remedy Q Services' violation of Yardley's rights under the FMLA.

## COUNT IV: VIOLATION OF INDIANA CODE § 22-2-6-4

56. Yardley hereby incorporates by reference Paragraphs 1 – 55 of this Complaint.

57. Yardley is entitled to the entire $1,674.36 as earned wages that were originally deposited into his bank account on March 24, 2017 by Q Services. However, even if he were not, Q Services violated I.C. § 22-2-6-4 by immediately withdrawing the entire amount paid to Yardley on March 24, 2017.

58. Q Service's deduction of $1,674.36 from Yardley's bank account was in bad faith.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Jeffrey Yardley, respectfully demands judgment against Defendant in his favor and requests that the Court grant the following relief:

a) An Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid back wages due to Yardley, in addition to liquidated damages equal in amount to the unpaid compensation due to Yardley;

b) An Order pursuant to § 22-2-9 *et. seq.* finding Defendant liable for unpaid earned wages due to Yardley and for liquidated damages double in amount to the unpaid wages found due to Yardley;

c) An Order awarding Yardley the wages he lost and the value of any other benefits he lost as a result of his unlawful termination;

d) An Order awarding Yardley liquidated damages in an amount equal to his lost wages as a penalty;

e) An Order awarding the costs of this action;

f) An Order awarding reasonable attorneys' fees;

g) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

h) An Order granting such other and further relief as may be necessary and appropriate, including, but not limited to, reinstatement.

s/Robert J. Hunt
Robert J. Hunt, (#30686-49)
The Law Office of Robert J. Hunt, LLC
3091 E. 98th Street, Suite 280
Indianapolis, Indiana 46280
Telephone: (317) 743-0614
Facsimile: (317) 743-0615
E-Mail: rob@indianawagelaw.com

Attorney for Plaintiff

# DEMAND FOR JURY TRIAL

Comes now the Plaintiff, Jeffrey Yardley, by his counsel, and hereby requests a trial by jury, on all issues which may be tried to a jury.

s/Robert J. Hunt
Robert J. Hunt (#30686-49)